**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IDA SPELLS, | ) |
| | ) |
| Plaintiff(s), | )    CIVIL ACTION NO.: 1:24-cv-25137 |
| | ) |
| v. | ) |
| | ) |
| CARNIVAL CORPORATION, | ) |
| D/B/A CARNIVAL CRUISE LINE, | ) |
| | ) |
| Defendant(s). | ) |
| _____ | / |

**AMENDED COMPLAINT and DEMAND FOR JURY TRIAL**

Plaintiff, IDA SPELLS ("Plaintiff"), hereby brings this Amended Complaint and Demand for Jury Trial against Defendant, CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINE ("Defendant" or "Carnival"), and alleges as follows:

**NATURE OF THE CLAIM**

1.      This action seeks compensatory damages for Defendant's negligence in causing Plaintiff's severe and permanent injuries.

2.      Defendant has been aware for some time now, dating back to at least December 2002, that its *Conquest* cruise ship's open deck staircases present a dangerous condition for its passengers. As alleged in further detail below, Carnival has simply failed to take reasonable steps to eliminate this dangerous condition from the Carnival *Conquest*. As a direct and proximate result of Carnival's negligence, Plaintiff sustained permanent and severe injuries.

**THE PARTIES**

3.      Plaintiff is a resident and citizen of Marion County, Indiana, and is otherwise *sui juris*.

4.     Defendant, Carnival, is a foreign corporation incorporated outside the State of Florida, but does business in the State of Florida, regularly markets to residents of the State of Florida, does business in, and maintains its headquarters in Miami-Dade County, Florida.

5.     At all times material hereto, Carnival owned and operated the cruise ship where the subject negligence occurred.

## JURISDICTION and VENUE

6.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, exclusive of interests and costs, is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign State. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.  Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

7.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction.

8.     At all times material hereto, this Court has personal jurisdiction over Defendant, pursuant to Florida Statutes §48.193(1)(a)(1), (2), and (6), because Defendant conducts substantial business in this District,  and was carrying on a business or business venture in this state or having an office or agency in this state.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**FACTUAL ALLEGATIONS**

10.     On June 5, 2024, Plaintiff was a ticketed passenger aboard the Carnival *Conquest* cruise while it was in navigable waters.

11.     At all times material hereto, Plaintiff was an invitee on Defendant's *Conquest* cruise ship.

12.     The subject incident occurred on the open deck staircase going from Deck 11 down to Deck 10 of Carnival's *Conquest* cruise ship.

13.     Carnival owes Plaintiff a duty of reasonable care under the circumstances.

14.     The Carnival *Conquest* is a cruise ship which Carnival had custom built to specifications and designs which were made by or under the supervision and participation of Carnival. The *Conquest* was designed by or at the direction of Carnival's shoreside New Build and other shoreside departments.  Carnival employs architects, designers, and engineers. The ship was built at the Fincantieri Shipyard in Monfalcone, Italy, under the constant supervision of Carnival's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, Carnival has not only full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. Carnival holds the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, Carnival can withhold payment.  That includes the flooring materials which caused this fall and Plaintiff's injuries.

15.     The *Conquest* was delivered to Carnival as finished and took its maiden voyage on November 12, 2002. Carnival has operated and maintained the ship continuously since that time. The *Carnival Conquest* has a capacity for 2,980 passengers and 1,150 crew members.  The

Carnival *Conquest* is a part of the *Conquest*-class cruise ships which includes the Carnival *Glory*, Carnival *Valor*, Carnival *Liberty*, and Carnival *Freedom*. Carnival has operated and maintained the other ships in the *Conquest* -class, listed above, continuously since the time when each of those ships were first built and put into service. Carnival also custom built to specifications and designs which were made by or under the supervision and participation of Carnival all the *Conquest* -class ships, listed above. The design and construction of these ships was under supervision and with the participation of Carnival personnel who were stationed onsite in the shipyard during construction.

16.     Carnival chose to install flooring materials on the staircases of its open decks which can be extremely slippery when wet. Carnival selected, designed, and constructed the flooring materials installed on the *Conquest*'s open deck staircases, including the area where Plaintiff fell. Carnival knows and expects that passengers will use staircases available to them to ingress and egress between decks, just as Plaintiff did during the subject incident.

17.     Because Carnival knows that its Panorama deck floor and staircases are slippery when they are wet, it places small anti-slip strips on the edge of their steps and a railing for their exterior staircases. The anti-slip grip strips fail to completely cover the staircase steps and are difficult to see at night, due to a lack of reasonable lighting in the area where Plaintiff fell. Since anti-grip strips do not provide for complete coverage of each step, passengers such as Plaintiff, are forced to step onto the wet and slippery staircase flooring. Moreover, these anti-slip grip strips wear down over time thereby reducing their ability to prevent passengers from slipping. Carnival knew or should have known to reasonably inspect and replace this tape to ensure that it is in a reasonably safe condition, provides sufficient coverage, and is properly adhered to its open deck staircases. Carnival knew or should have known that if these strips are not reasonably maintained and/or not properly adhered to its open deck staircases, that guests like the Plaintiff can slip and

suffer injuries.

18.     Carnival provides open decks and open deck staircases on all its cruise ships, including the Carnival *Conquest*. Carnival *Conquest*'s several open deck areas, including Deck 10 where the subject incident occurred, offer numerous amenities such as restaurants, attractions, swimming pools, showers, waterslides, jacuzzies, and/or other activities. Carnival's restaurants and other amenities are open to passengers in the morning through late at night.  Hundreds if not thousands of Carnival's passengers repetitively use these amenities during Carnival cruises. These open deck areas are open to passengers every day at all hours and therefore are in continuous operation. Carnival knows that passengers repeatedly traverse Carnival's open deck staircases to go from deck to deck and enjoy the various restaurants, pools, waterslides, jacuzzies, and/or other amenities that the *Conquest* provides.  In doing so passengers not only track water over Carnival's open deck staircases but they also apply sunscreens, suntan oils, and suntan lotions while sunbathing. These oils and lotions drip directly onto the open deck staircases and are washed onto that surface when sunbathers sweat, when they go into the pool and the pool water drips off of them, and onto the deck carrying the oils and lotions onto the deck along with the water. Passengers also repetitively spill food and drinks while walking through the open deck staircases. Carnival allows and anticipates that Carnival passengers will carry food and drink throughout the open deck staircases and in doing so cause spills.  Carnival knows that its passengers who use its waterslides, showers, jacuzzies and pool areas drip and track water from its pools, showers, jacuzzies and waterslides throughout its open decks and as they use the staircases to get from deck to deck.  Carnival knew or should have known that passengers repetitively get wet and track water from the waterslides, showers, jacuzzies and pools throughout its open deck staircases. Carnival also knew or should have known that passengers tracking and dripping water, grease, food, and/or drinks causes liquid accumulations

on its open deck staircases.

19. Because of all this activity, Carnival knows its open deck staircases repetitively get wet. Therefore Carnival knows it is important and it must protect pedestrian traffic by inspecting open deck flooring for accumulations of water, drinks, foods, and other substances by blocking off areas where liquid accumulates, cleaning, and drying these areas, and warning people in other ways (i.e. using signs or people to warn passengers away from the liquid accumulations, cordoning off areas that are in the process of being cleaned, or using blowers to dry the area). Carnival knows that the open deck staircases experience significant foot traffic, and thus Carnival knows that its employees must take adequate safety measures to locate, warn, and remedy wet surfaces. Especially at night when liquid accumulations are more difficult to see.

20. Carnival knows from years of experience with this type of flooring on its open deck staircases, and documenting numerous prior incidents of other slip and falls on this same type of flooring on all its ships, that the open deck staircases repetitively and continuously suffer accumulations of water, drinks, food, debris, grease, and other liquids, and are extremely and unreasonably slippery when wet.

21. Passengers who use the staircases to get from deck to deck reasonably expect that Carnival will clean, maintain, dry, and make the area safe for passenger use. Carnival knows that its passengers will use its staircases, yet Carnival fails to inspect with sufficient regularity, fails to clean and dry with sufficient regularity, fails to block off wet and slippery parts of the flooring, fails to place slip resistant strips that are reasonably large enough, uses worn down or insufficient slip resistant strips, and/or fails to warn with sufficient signage. The dangerous nature of the flooring is not open and obvious because the flooring is obstructed by the lack of reasonable lighting, other items, and/or accumulations of water blend in with the flooring.

22.     The staircase deck flooring where the subject incident occurred also holds water. Once the staircase deck flooring is soaked and can no longer hold water, the excess water accumulates and sits on the steps thereby creating large wet areas on the steps of the staircase. Carnival knew or should have known that large amounts of water had accumulated on the exterior staircase steps and landing next to Panorama Deck 10, on June 5, 2024, because this is an on-going, repetitive problem. Carnival failed to dry mop, mop, dry, and/or otherwise clean the floor from water accumulations. Carnival knew or should have known of this condition because of its large size, its shape, its characteristics and because the area of water existed on the staircase steps and landing for an extended, unreasonably long duration under the circumstances and/or Carnival created the dangerous condition.

23.     Carnival failed to dry mop, mop, dry, and/or otherwise clean the floor from water accumulations from the staircase steps and landing. Carnival also failed to properly mark this dangerous condition, cordon off, block off the area, timely post warning signs, and/or otherwise warn its passengers of this dangerous condition. Carnival also knew or should have known that its exterior staircases do not have reasonably sufficient lighting to allow for accumulation of water on its steps to be apparent once the sun goes down.

24.     Carnival created the dangerous condition by mopping, wetting, and/or otherwise failing to properly dry the staircase steps and landing after performing cleaning of the area. Carnival also failed to cordon, block off the area, restrict access, post timely warning signs, or otherwise warn its passengers of cleaning or a dangerous water accumulation in the area.

25.     On the evening of June 5, 2024, Carnival's crew members allowed liquid to accumulate and remain on the open deck staircase going towards Deck 10 for a significant period of time. The accumulation of liquid in this highly trafficked area was a continuous, ongoing, AND

repetitive condition. Carnival either created, knew, or should have known of this dangerous condition and failed to cordon, block off, restrict access to the area, or otherwise warn passengers to stay away from the area.

26.     At that same time and place, passenger Ida Spells slipped and fell as she was walking down the staircase going towards the 10th deck (Panorama Deck) and sustained severe permanent injuries. It was dark and there was insufficient lighting in or around the staircase. The steps had a large accumulation of water that blended with the floor of the steps, which was made even more difficult to see by the lack of reasonable lighting. Plaintiff was not aware of the accumulation of water in the steps as there were no wet floor, caution signs, or cones near the area where she fell.

27.     Plaintiff promptly reported the incident to Carnival and was taken to the medical infirmary on board the *Conquest*.

28.     Defendant knew or should have known about the dangerous and hazardous conditions created on the staircase leading to the Panorama Deck from prior similar incidents. Defendant documents slip and falls in various ways, which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. *See Jones v. Otis Elevator Co*., 861 F.2d 655, 661-62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice", "conditions substantially similar to the occurrence in question must have caused the prior accident"). *See Taiariol v. MSC Crociere S.A*., 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while

aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); *See Sorrels v. NCL (Bahamas) Ltd*., 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances….."). Examples of prior similar incidents known to date include the following:

    a.  Passenger Michelle Newbauer was injured on February 27, 2019, when she slipped and fell on the Panorama Deck on board the Carnival *Magic*. *Michelle Newbauer v. Carnival Corp.,* Case No.: 1:20-cv-23757. Carnival also owns and operates the *Magic*.

    b.  Passenger Hoffman was injured when he slipped and fell on the Panorama Deck on board the CCL *Magic*. *Hoffman v. Carnival Corp.,* Case No.: 1:19-cv-25277.

    c.  Passenger Tammy Lopez was injured on October 6, 2019, when she slipped and fell on the Panorama Deck on board the *CCL Dream*. *Tammy Lopez v. Carnival Corp.*, Case Number 1:22-cv-20669. Carnival also owns and operates the *CCL Dream*. The *Magic* is a sister-ship to the *CCL Dream*. Additionally, according to the allegations in the *Lopez* complaint, on the same day of her incident, other passengers slipped and fell in the same area as *Lopez*.

    d.  Passenger Williams was injured on June 4, 2017, when he slipped and fell on the Panorama Deck on board the *CCL Liberty*. *Williams v. Carnival Corp*., 440 F. Supp. 3d 1316 (S.D. Fla. 2020). Carnival also owns and operates the *CCL Liberty*, which is a sister-ship to the *Conquest*.

    e.  Passenger Galarza was injured on October 18, 2014, when she slipped and fell on stairs on the Panorama Deck on board the *CCL Liberty. Galarza v. Carnival Corp.,* Case No.: 1:15-cv-24380

f.  Passenger Britt was injured on July 22, 2019, when she slipped and fell on the top step of an exterior staircase on board the *CCL Glory. Britt v. Carnival Corp.,* Case No.: 1:21-cv-22726. Carnival also owns and operates the *CCL Glory*, which is a sister-ship to the *Conquest.*

g.  Passenger Calixterio was injured on June 3, 2014, when she slipped on water that had accumulated on a step and fell down several stairs on board the *CCL Glory. Calixterio v. Carnival Corp.,* Case No.: 1:15-cv-22210.

h.  Passenger Debra Land was injured on July 12, 2022, when she slipped and fell on a foreign substance on the floor surface of the Lido Deck aboard the *CCL Valor. Land v. Carnival Corp.,* Case No.: 1:23-cv-23136. Carnival also owns and operates the *CCL Valor*, which is a sister-ship to the *Conquest.*

29.  Carnival knew or should have known about the dangerous condition because of the length of time that the condition existed. In order for the water accumulation to be as large as it was on the staircase where Plaintiff fell, the condition existed for an extended period of time. During the early morning of June 5, 2024, the *Conquest* was docked at the port of Miami. The *Conquest* was scheduled to depart the port of Miami at 3:30pm EST. The incident occurred several hours later at nighttime. More than one hour had elapsed since the *Conquest* departed the port of Miami to when the subject incident occurred. *See Plott v. NCL Am.,* LLC, 786 Fed. Appx. 199, 201 (11th Cir. 2019) (finding sufficient period of time when crewmembers continuously monitored an area that had been wet for at least twenty to twenty-five minutes); *Underwood v. NCL (Bahamas) Ltd.,* 2019 WL 2011389, at *2 (S.D. Fla. Feb. 12, 2019) (sufficient period of time when puddle existed for at least fifteen minutes); *Thomas v. NCL (Bahamas), Ltd.,* 203 F. Supp. 3d 1189, 1190 (S.D. Fla. 2016) (puddle that existed at least fifteen minutes sufficient for a reasonable

jury to find constructive notice); *Marsh v. Celebrity Cruises, Inc.*, 2017 WL 6498107, at *3  (S.D. Fla. Dec. 13, 2017) (evidence that a liquid was present on the floor for at least  thirty minutes before plaintiff's fall sufficient for a reasonable jury to find a defendant cruise ship operator had constructive knowledge of its existence.).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Negligent Maintenance

30.     This is an action for Carnival's negligent maintenance of the open deck staircase going towards Deck 10 of the *Conquest*.

31.     Carnival owes a "duty to exercise reasonable care for the safety of its passengers," including Plaintiff. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991).

32.     Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles."); amongst industry standards, laws, codes, and regulations. Carnival's open decks staircases are escape routes that Carnival knew or should have known must be maintained in a reasonably safe, clear, clean, and dry condition.  Carnival, at all times relevant, created its own internal policies and procedures to provide clean and dry staircases, cordon off and/or block wet staircases, and warn passengers of wet staircases. Therefore, Carnival knew or

should have known it must provide clean and dry staircases, maintain its staircases in a reasonably safe condition, maintain its staircases without the presence of dangerous conditions, not create dangerous conditions around its staircases, cordon off, block off, and/or restrict passengers access to wet staircases. Carnival, at all times material hereto, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to maintaining safe walkways, staircases, and floor materials.

33.     Carnival owes a duty as a common carrier to its passengers to maintain all areas of the Carnival *Conquest.* Carnival owes a duty of reasonable care under the circumstances.  The circumstances are as follows.  One of Carnival's common areas are its open decks that Carnival operates on every one of its ships. Carnival hires and employs crew members who are responsible for reasonable maintenance of shipboard floor surfaces including those located on Carnival's open deck staircases. Carnival provides its passengers with dining options, entertainment, pools, jacuzzies, waterslides, activities, amenities, and events hosted by Carnival personnel including on its open deck areas. Carnival's passengers oftentimes go from the restaurant directly into the pools/jacuzzies and then onto the staircases to go from deck to deck. Passengers repetitively spill, drip, and track water, liquids, food, debris, grease, drinks, and other liquids directly onto the open deck staircases. Additionally, passengers repetitively drip and track water from their wet swimsuits, waterslides, showers, jacuzzies and/or pools on the open deck staircases. Liquid accumulates on Carnival's open deck floors from passengers repetitively spilling, dripping, and tracking drinks, grease, suntan oils, and liquids on its open deck staircases.  This is an ongoing, continuous problem of which Carnival is well aware.  Carnival employs crew members who must carefully and with enough regularity inspect and monitor its floor surfaces and clean up spills, liquid accumulations, and puddles.  Because of all this activity within Carnival's open decks, it is

important for Carnival to keep its staircases clean and dry, actively inspect for spills, tracked liquids, rainwater, grease, food, debris, sea spray, and other sources of liquids to clean them to prevent slip and falls.

34. As part of Carnival's duty to maintain the *Conquest*, crew members must dry the staircase floor, cordon off the wet staircase floor, or put wet floor signs on the wet floors. Carnival crew members must carefully and with sufficient regularity inspect and monitor for wet floors, spills, debris, oils, lotions, and other liquids on Carnival's open deck staircases to prevent slip and falls. It is important to clean, dry, block off or warn passengers of wet floors on Carnival's open deck staircases to prevent slip and falls.

35. Because Carnival's open deck staircases are highly trafficked by passengers and crew, Carnival knows that it must maintain its floor surfaces in a condition that complies with applicable industry standards, statutes, laws, and/or regulations. Carnival owes Plaintiff a duty to comply with applicable industry standards, statutes, laws, and/or regulations as part of its maintenance of the *Conquest* in order to prevent slip and falls.

36. Carnival also has a duty to maintain its staircases in a reasonably safe condition. Specifically, Carnival must take reasonable measures to maintain all staircases with slip resistant flooring, tape, and/or material that prevents passengers from slipping and falling. The slip resistant material should be of sufficient length and size to cover the staircase area, and must also be in reasonably good condition, not worn-down, dull, or past its useful life. The slip resistant material on the open deck staircases must also comply with applicable industry standards, statutes, laws, and/or regulations.

37. Carnival breached its duty of reasonable care owed to Plaintiff because Carnival failed to maintain its open deck staircase in a clean, dry, and reasonably safe condition. Carnival

failed to reasonably inspect and monitor its open deck staircase such that it could find liquid accumulations and wet areas in order to clean and dry the area. Carnival failed to inspect and monitor areas for accumulations of water and/or liquids such that it failed to dry, cordon off, and/or mark wet areas with warning signs. Carnival failed to reasonably maintain its staircase floors in compliance with applicable industry standards, statutes, and/or regulations.

38.     Carnival breached its duty of reasonable care by creating a dangerous condition on its staircase in the form of cleaning fluid, water, or other liquid accumulation. Carnival failed to block off, cordon off, mark, or otherwise clean/dry the liquid accumulation in the area where Plaintiff fell. Carnival did not restrict or control access to the staircase area, even though Carnival knew or should have known that the area was dangerous to passengers, such as the Plaintiff. Carnival also failed to have reasonably sufficient lighting in the area, so that Plaintiff would be able to see the liquid accumulation and use caution in the area.

39.     Carnival breached its duty of reasonable care by failing to maintain the staircase with anti-slip surfaces that were in reasonably good condition, covered a sufficient area, and/or provided the required anti-slip resistance. Additionally, Carnival also breached its duty of reasonable care by having anti-slip surfaces on its staircase that were too worn down or poorly maintained to provide the anti-slip resistance required by industry standards, statutes, codes, and/or regulations.

40.     Defendant is also vicariously liable and responsible for the negligent acts of its shipboard crew members who were employees and/or actual agents of the Defendant. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014). The cruise line is vicariously liable for the negligent maintenance of the *Conquest* by its crew members. This ultimately is based on the fact that the crew members are employees of the cruise line. At the time of the subject

incident described, Carnival's crew members assigned to clean and maintain the area where the subject incident occurred were engaged in the furtherance of the business of Defendant's cruise ship.

41.     The crew members assigned to the area where Plaintiff fell breached their duty of reasonable care by creating a dangerous condition on the staircase in the form of cleaning fluid, water, or other liquid accumulation. The crew members assigned to the area where Plaintiff fell also failed to block off, cordon off, mark, or otherwise clean/dry the liquid accumulation. The crew members assigned to the area where Plaintiff fell failed with sufficient regularity to inspect and monitor for wet floors, spills, debris, oils, lotions, and other liquids on Carnival's open deck staircases to prevent slip and falls.

42.     Therefore, under *respondeat superior* Carnival is vicariously liable for the negligence of all crew members working aboard its ships.

43.     Carnival's negligent maintenance of the *Conquest* proximately caused Plaintiff's severe and permanent injuries on June 5, 2024. As a direct and proximate result of the negligence of Carnival's employees as described above, Plaintiff suffered severe and permanent injuries. Carnival is vicariously liable for these damages alleged herein because of the *respondeat superior* relationship with Carnival crew member employees as described herein.

44.     Carnival's negligent maintenance of the *Conquest* proximately caused permanent injuries  and damages to Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including

pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiff sues Carnival and demands judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

<u>**SECOND CLAIM FOR RELIEF**</u>
<u>**Negligent Failure to Warn**</u>

45.     This is an action for Carnival's negligent failure to warn Plaintiff of a large liquid accumulation, slippery floor surface, and/or cleaning being performed on and around its open deck staircase going towards Deck 10 of the *Conquest*.

46.     Carnival's open decks staircases repetitively get wet with liquids from spills, sauces, food, tracking of liquids by passenger, and crew member foot traffic. Carnival's passengers repeatedly enter and exit Carnival's pools, showers, jacuzzies and waterslides throughout the day and drip and track water, grease, lotion, drinks, food, and liquids throughout the open deck staircases. Carnival knew or should have known that the floor surfaces on its open deck staircase areas are slippery when wet. Wet areas can blend with Carnival's open deck staircases flooring, especially at night when there is insufficient lighting around Deck 10 of the *Conquest*. Carnival passengers may not know how slippery its floor surfaces on its open deck staircases can be when wet. Therefore, Carnival knew or should have known to warn its passengers that the floor surfaces on Carnival open decks staircases can be slippery, especially when wet.

47.     Carnival owes a "duty to exercise reasonable care for the safety of its passengers,"

including Plaintiff. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *See also Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

48.      Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles."); amongst other industry standards, statutes, laws, codes, and regulations.  Carnival's open decks staircases are escape routes that Carnival knew or should have known must be maintained in a safe, clear, clean, and dry condition.  Carnival, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Therefore, Carnival knew or should have known it must warn passengers of wet floors.  Upon information and belief Carnival, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to maintaining safe walkways, staircases, and floor materials and warning passengers of dangerous conditions such as

liquid accumulations.

49.     Carnival owes a duty as a common carrier to warn its passengers of dangers known to Carnival where Carnival invites or reasonably expects passengers to go.  Carnival owes a duty of reasonable care under the circumstances.  Carnival invites and encourages passengers to walk through its open decks, socialize, enjoy the views, eat at the restaurants, go in the pools or hot tubs, attend activities, events, and enjoy other amenities on Carnival's open decks.  It is expected that passengers, including Plaintiff, are going to walk up and down Carnival's open deck staircases.

50.     Carnival documents prior slip and falls, slipperiness, and water accumulations on its open deck staircases, in various ways which may include prior shipboard meetings; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; prior slip testing of the floor surface.  Carnival also distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters, and safety videos.  Carnival's crew members are required to warn passengers of wet floors by using wet floor signs, marking or blocking off the area to prevent passengers from slipping on wet floors or areas that are being cleaned.

51.     Carnival breached its duty to warn Plaintiff of a dangerous condition on the open deck staircase. Carnival failed to place signs, cones, stickers, lights, and other visual notices or written on or near the wet floor staircase. Carnival and Carnival's crew members failed to make audible announcements that the staircases around Deck 10 are being cleaned and/or are dangerous, slippery, and wet.  Carnival failed to cordon off the area, place physical barriers, or otherwise to prevent access to the staircase where this liquid had accumulated. Carnival failed to block, cordon off, prevent access, and/or otherwise warn Plaintiff that the open deck staircase was being cleaned, had a large liquid accumulation, was unreasonably slippery, and/or contained the presence of

dangerous conditions.

52.     Carnival breached the duty owed to Plaintiff by failing to warn her of the liquid accumulation, slippery staircase floors, lack of reasonably maintained anti-slip surfaces on the staircase, lack of sufficiently sized anti-slip surfaces on the staircase, and/or cleaning being done in the area where Plaintiff fell.  Carnival also breached the duty owed to Plaintiff by failing to comply with applicable industry standards, statutes, and/or regulations regarding warning passengers of liquid accumulations, cleaning being performed in an area, slippery staircase floors, lack of reasonably maintained anti-slip surfaces on the staircase, lack of sufficiently sized anti-slip surfaces on the staircase, and other dangerous conditions.

53.     Defendant is also vicariously liable and responsible for the negligent acts of its shipboard crew members who were employees and/or actual agents of the Defendant. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).  The cruise line is vicariously liable for its crew members' negligent failure to warn Plaintiff. This ultimately is based on the fact that the crew members are employees of the cruise line. At the time of the subject incident described, Carnival's crew members assigned to clean and maintain the area where the subject incident occurred were engaged in the furtherance of the business of Defendant's cruise ship.

54.     Carnival's crew members failed to block, cordon off, prevent access, and/or otherwise warn Plaintiff that the open deck staircase was being cleaned, had a large liquid accumulation, and/or contained the presence of dangerous conditions. The crew members assigned to the area where Plaintiff fell breached their duty of reasonable care by failing to warn her of the liquid accumulation, slippery staircase floors, lack of reasonably maintained anti-slip surfaces on the staircase, lack of sufficiently sized anti-slip surfaces on the staircase, and/or cleaning being done in the area.

55.     Therefore, under *respondeat superior* Carnival is vicariously liable for the negligence of all crew members working aboard its ships.

56.     Carnival's negligent failure to warn proximately caused Plaintiff's severe and permanent injuries on June 5, 2024. As a direct and proximate result of the negligence of Carnival's employees as described above, Plaintiff suffered severe and permanent injuries. Carnival is vicariously liable for these damages alleged herein because of the *respondeat superior* relationship with Carnival crew member employees as described herein.

57.     Carnival's failure to warn Plaintiff of cleaning being performed in the area, large liquid accumulation, and the slippery nature of the staircases proximately caused Plaintiff's injuries. Had Carnival properly warned Plaintiff of the dangerous condition of the wet staircases, Plaintiff would never have walked onto the floor surface. Plaintiff therefore would never have slipped and fallen onto the hard floor surface.

58.     Carnival's negligent failure to warn proximately caused permanent injuries and damages to Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiff sues Carnival and demands judgment against Carnival for all

legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

**THIRD CLAIM FOR RELIEF**
**Negligent Training**

59. This is an action arising from Carnival's negligent training of shipboard crew members.

60. Carnival trains its shipboard crew members to warn passengers that its staircase floors may be slippery, especially when wet and when cleaning is being performed. Carnival's open deck staircases repeatedly get wet from passengers dripping and/or tracking water, drinks, debris, food, oils, options, and other liquids on the floor.  Carnival knew or should have known to train crew members to warn passengers, including Plaintiff, that the floor surface on the open deck staircases where Plaintiff fell can be extremely slippery when wet. Carnival knew or should have known to train crew members to cordon off, block off, and restrict access to areas that had liquid accumulations, were being cleaned, were slippery, were dangerous, or were wet, so that passengers, including Plaintiff, would not walk in these areas.  Carnival also knew or should have known to train crew members to periodically replace and maintain the anti-slip surfaces contained on the staircases of the Carnival *Conquest* and ensure that the anti-slip surfaces sufficiently cover a large enough area.

61. Carnival trains its crew members to inspect for wet areas and to clean and dry floors. Carnival trains its crew members on how to keep floors clean and dry. Carnival trains its crew members on how to keep the floors clean and dry in order to prevent slip and falls.  Carnival trains its crew members to warn passengers, including Plaintiff, of wet floors and areas being cleaned, in order to prevent slip and falls.

62.     Carnival's trainings and procedures instruct crew members that its open deck staircases are slippery when wet, which can cause passengers to slip, fall, and get injured. Carnival also trains and created procedures which require crew members to place wet floor signs on staircases that become repetitively wet, are known to be wet, or where Carnival is performing cleaning.

63.     Carnival also documents prior slip and falls, complaints of slipperiness and water accumulations on the open deck staircases in various ways which may include logs or databases of prior slip and falls on Carnival ships on the same or similar type of floor; Carnival's shipboard meetings; prior complaints made to guest services throughout its fleet; and prior slip testing of the floor surface.  Carnival distributes crew member training materials; other safety warning messages including those made through verbal announcement, newsletters and safety videos regarding its open deck staircases including the area where the subject incident occurred. Carnival knew or should have known the importance of training its crew members to warn passengers that the floors on its open deck staircases are slippery when wet.  Despite knowing how and the reason why Carnival should train its crew members to warn passengers of dangerous conditions and maintain the staircases in a reasonably safe manner, Carnival failed to do so.

64.     Carnival owes a "duty to exercise reasonable care for the safety of its passengers" including Plaintiff. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to train its shipboard crew members.

65.     Carnival, at all relevant times, was also under a legal duty to train its employees and crew members comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles."); amongst other industry standards, laws, codes, and regulations.  Carnival's open deck staircases are escape routes that Carnival knew or should have known it must maintain in a safe, clear, clean, and dry condition. Carnival, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Therefore, Carnival knew or should have known it must train its crew members to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Carnival knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to maintaining safe walkways, staircases, and floor materials, and had a duty to train its crew members on these applicable standards.  Carnival therefore knew the importance and necessity to train its crew members to keep its open deck staircases clean and dry.

66.     Carnival's duty to train its crew members to inspect and maintain the open deck staircases in a clean and dry condition; block and/or cordon off wet floors and warn passengers that the open deck staircases are slippery when wet, is part of Carnival's duty of reasonable care under the circumstances. This duty requires Carnival to train crew members how to properly and reasonably warn passengers of wet floors, to inspect and maintain floors in a clean and dry condition, and cordon and/or block off areas with wet floors, especially when Carnival is cleaning

the area at nighttime. Carnival also must train its employees to perform reasonable maintenance of the staircases where Plaintiff fell, including, ensuring that any anti-slip resistance tape is reasonably maintained and sufficiently covers enough surface area of the step. Carnival owed a duty to Plaintiff to implement a comprehensive training program for its crew members, employees, agents, and/or contractors that encompasses industry standards, laws, codes, and regulations; Carnival's policies and procedures; and the employee's duties and responsibilities, specifically related to maintenance and cleaning.

67.    Carnival breached its duty of care owed to Plaintiff and was negligent by failing to reasonably train its crew members how to inspect for wet areas, liquid accumulations, and puddles on a regular basis, maintain the open deck staircases in a clean and dry condition, cordon and/or block off wet areas to prevent passengers from walking on wet floors, warn passengers the flooring can be slippery when wet, and warn passengers of a dangerous liquid accumulation.  Carnival also failed to reasonably train its employees on how to provide warnings to passengers or restrict access to areas that Carnival's employees were cleaning.

68.    Carnival breached its duty of care owed to Plaintiff by failing to train its employees on how to reasonably maintain slip resistant tape, adhesive, or other materials designed to prevent slip and falls on the steps of the staircase where Plaintiff fell.

69.    Carnival also breached its duty to Plaintiff by failing to comply with industry standards, statutes, codes, and regulations regarding how to train its crew members to inspect and maintain the flooring, maintain anti-slip surfaces, warn passengers of wet floors, warn passengers of slippery floors, and the dangerousness of wet floors.

70.    Carnival also breached its duty to Plaintiff by failing to implement a comprehensive training program for its crew members, employees, agents, and/or contractors that encompasses

industry standards, laws, codes, and regulations; Carnival's policies and procedures; and the employee's duties and responsibilities, specifically related to maintenance and cleaning.

71.     Carnival's failure to properly train its crew members proximately caused Plaintiff's injuries.  Had Carnival properly trained its crew members how to inspect for wet areas and puddles on a regular basis, maintain the staircases in a clean and dry condition, maintain the staircases with reasonably maintained anti-slip tape and/or sufficiently sized anti-slip tape, warn passengers the flooring can be slippery when wet, cordon, restrict access, and/or block off areas with wet floors, and that open deck staircase floors can be unreasonably slippery, then Plaintiff would never have slipped and fallen onto the hard floor surface.

72.     Carnival's negligent training of its crew members, employees, agents, and/or contractors proximately caused permanent injuries and damages to Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiff sues Carnival and demands judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## FOURTH CLAIM FOR RELIEF
### Negligent Hiring

73. This is an action arising from Carnival's negligent training of shipboard crew members.

74. Carnival owed a duty to Plaintiff to implement reasonable policies, rules, and/or procedures for the selection, investigation, and screening of all crew members, employees, agents, and/or contractors that were hired to work on the *Conquest*.

75. Carnival negligently failed to reasonably investigate, screen, and exclude crew members, employees, agents, and/or contractors that were not fit, competent, or suited to work on the *Conquest*.

76. Carnival owed a duty to Plaintiff to reasonably screen and hire crew members, employees, agents, and/or contractors that could comply with all applicable industry standards, laws, codes, and regulations; could follow Carnival's policies and procedures; could reasonably perform their duties and responsibilities; could warn passengers of dangerous conditions on the *Conquest*; could maintain the staircases and other areas of the *Conquest* in a reasonably safe condition; and/or would not create dangerous conditions on the staircases or other areas of the *Conquest*.

77. Carnival negligently failed to reasonably investigate, screen, and exclude crew members, employees, agents, and/or contractors that were not fit, competent, or suited to perform the required work; could not comply with all applicable industry standards, laws, codes, and regulations; could not follow Carnival's policies and procedures; could not reasonably perform their duties and responsibilities; could not warn passengers of dangerous conditions on the

staircases of the *Conquest*; could not maintain the staircases of the *Conquest* in a reasonably safe condition; and/or would create dangerous conditions on the staircases of the *Conquest*.

78.     Carnival negligently failed to investigate, screen, and exclude crew members, employees, agents, and/or contractors that could not keep the staircases around Deck 10 clean, dry, and free from large liquid accumulations.

79.     Carnival negligently failed to investigate, screen, and exclude crew members, employees, agents, and/or contractors that could not block, cordon off, or otherwise restrict access to the staircases around Deck 10 when they were performing cleaning and/or there was a dangerous liquid accumulation present.

80.     Carnival negligently failed to investigate, screen, and exclude crew members, employees, agents, and/or contractors that could not replace or maintain the staircases around Deck 10 with anti-slip surfaces that were in reasonably good condition, covered a sufficient area, and/or provided the required anti-slip resistance.

81.     Carnival negligently failed to investigate, screen, and exclude crew members, employees, agents, and/or contractors that could not warn passengers, such as Plaintiff, of a large liquid accumulation and other dangerous conditions on the staircases around Deck 10.

82.     Carnival either knew or should have known that its employees, agents, and/or contractors on the *Conquest* were not fit, competent, or suited to perform the required work; could not comply with all applicable industry standards, laws, codes, and regulations; could not follow Carnival's policies and procedures; could not reasonably perform their duties and responsibilities; could not keep the staircases around Deck 10 clean, dry, and free from large liquid accumulations; could not block, cordon off, or otherwise restrict access to the staircases around Deck 10 when they were performing cleaning and/or there was a dangerous liquid accumulation present; could

not replace or maintain the staircases with anti-slip surfaces that were in reasonably good condition, covered a sufficient area, and/or provided the required anti-slip resistance; could not warn passengers of dangerous conditions on the *Conquest*; could not maintain the *Conquest* in a reasonably safe condition; and/or would create dangerous conditions on the *Conquest*.

83. Because of Carnival's negligent failure to reasonably investigate, screen, and exclude crew members, employees, agents, and/or contractors that were not fit, competent, or suited to perform the required work; could not comply with all applicable industry standards, laws, codes, and regulations; could not follow Carnival's policies and procedures; could not reasonably perform their duties and responsibilities; could not keep the staircases around Deck 10 clean, dry, and free from large liquid accumulations; could not block, cordon off, or otherwise restrict access to the staircases around Deck 10 when they were performing cleaning and/or there was a dangerous liquid accumulation present; could not replace or maintain the staircases with anti-slip surfaces that were in reasonably good condition, covered a sufficient area, and/or provided the required anti-slip resistance; could not warn passengers of dangerous conditions on the *Conquest*; could not maintain the *Conquest* in a reasonably safe condition; and/or would create dangerous conditions on the *Conquest*, Plaintiff sustained injuries.

84. Carnival's negligent hiring proximately caused permanent injuries and damages to Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish,

inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiff sues Carnival and demands judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

<u>**FIFTH CLAIM FOR RELIEF**</u>
<u>**Negligent Retention**</u>

85.     Carnival owed a duty to Plaintiff to implement reasonable policies, rules, and/or procedures for the retention and investigation of all crew members, employees, agents, and/or contractors that were working for Carnival aboard the *Conquest*.

86.     Carnival negligently failed to investigate, reassign, discharge, or otherwise terminate crew members, employees, agents, and/or contractors that were not fit, competent, or suited to work on the *Conquest*.

87.     Carnival owed a duty to Plaintiff to investigate, reassign, discharge, or otherwise terminate crew members, employees, agents, and/or contractors that, prior to the subject incident, could not comply with all applicable industry standards, laws, codes, and regulations; could not follow Carnival's policies and procedures; could not reasonably perform their duties and responsibilities; could not warn passengers of dangerous conditions on the *Conquest* in the past; could not maintain the *Conquest* in a reasonably safe condition in the past; and/or would create dangerous conditions on the *Conquest* in the past.

88.     Carnival negligently failed to investigate, reassign, discharge, or otherwise terminate crew members, employees, agents, and/or contractors that, prior to the subject incident,

were not fit, competent, or suited to perform the required work; could not comply with all applicable industry standards, laws, codes, and regulations; could not follow Carnival's policies and procedures; could not reasonably perform their duties and responsibilities; could not warn passengers of dangerous conditions on the *Conquest* in the past, could not maintain the *Conquest* in a reasonably safe condition in the past; and/or would create dangerous conditions on the *Conquest* in the past.

89.     Carnival negligently failed to investigate, reassign, discharge, or otherwise terminate crew members, employees, agents, and/or contractors that, prior to the subject incident, could not keep the floors and the staircases on the *Conquest* clean, dry, and free from large liquid accumulations in the past.

90.     Carnival negligently failed to investigate, reassign, discharge, or otherwise terminate crew members, employees, agents, and/or contractors that, prior to the subject incident, could not block, cordon off, or otherwise restrict access to the staircases or other areas on the *Conquest* when they were performing cleaning and/or there was a dangerous liquid accumulation present.

91.     Carnival negligently failed to investigate, reassign, discharge, or otherwise terminate crew members, employees, agents, and/or contractors that, prior to the subject incident, could not replace or maintain the staircases with anti-slip surfaces that were in reasonably good condition, covered a sufficient area, and/or provided the required anti-slip resistance.

92.     Carnival negligently failed to investigate, reassign, discharge, or otherwise terminate crew members, employees, agents, and/or contractors that, prior to the subject incident, could not warn passengers, such as Plaintiff, of a large liquid accumulation and other dangerous conditions.

93.     Prior to the subject incident, Carnival either knew or should have known that its crew members, employees, agents, and/or contractors on the *Conquest* were not fit, competent, or suited to perform the required work; could not comply with all applicable industry standards, laws, codes, and regulations; could not follow Carnival's policies and procedures; could not reasonably perform their duties and responsibilities; could not keep the staircases or the floors on the *Conquest* clean, dry, and free from large liquid accumulations; could not block, cordon off, or otherwise restrict access to the staircases or other areas on the *Conquest* when they were performing cleaning and/or there was a dangerous liquid accumulation present; could not replace or maintain the staircases with anti-slip surfaces that were in reasonably good condition, covered a sufficient area, and/or provided the required anti-slip resistance; could not warn passengers of dangerous conditions on the *Conquest*; could not maintain the *Conquest* in a reasonably safe condition; and/or would create dangerous conditions on the *Conquest*.

94.     Because of Carnival's negligent retention of crew members, employees, agents, and/or contractors that it knew or should have known, prior to the subject incident, were not fit, competent, or suited to perform the required work; could not comply with all applicable industry standards, laws, codes, and regulations; could not follow Carnival's policies and procedures; could not reasonably perform their duties and responsibilities; could not keep the staircases or the floors on the *Conquest* clean, dry, and free from large liquid accumulations; could not block, cordon off, or otherwise restrict access to the staircases or other areas on the *Conquest* when they were performing cleaning and/or there was a dangerous liquid accumulation present; could not replace or maintain the staircases with anti-slip surfaces that were in reasonably good condition, covered a sufficient area, and/or provided the required anti-slip resistance; could not warn passengers of

dangerous conditions on the *Conquest*; could not maintain the *Conquest* in a reasonably safe condition; and/or would create dangerous conditions on the *Conquest*, Plaintiff sustained injuries.

95.     Carnival's negligent retention proximately caused permanent injuries and damages to Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiff sues Carnival and demands judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

### SIXTH CLAIM FOR RELIEF
### Negligent Design, Construction, and/or Selection of Materials

96.     This count arises from Carnival's negligent design, construction, and selection of materials used in the flooring for the staircase going from Deck 11 to Deck 10 of the *Conquest*. Carnival's *Conquest* was custom-built according to the Defendant's specifications by Fiancantieri, S.p.A., at the Monfalcone, Italy, shipyard.  The Carnival *Conquest* was launched on February 1, 2002, and made its maiden voyage November 12, 2002.  Carnival custom designed and Fiancantieri, S.p.A. custom built the *Conquest* to Carnival's specifications, which includes the

flooring on Deck 10's staircase, where Plaintiff fell. Any refits, modifications and/or changes made to the Carnival *Conquest* were made in accordance with Carnival's custom designs and selection of changes and modifications of areas and features of the *Conquest*.

97.	At all times material hereto, Carnival had the ultimate control over the design and construction of the *Conquest*. Carnival had the right to inspect both the designs on paper, and the design and construction at the yard.  Carnival had the right under its contract with the yard to approve or reject the design, construction, and selection of all materials to construct all aspects of the *Conquest* including the flooring installed on the open deck staircases where Plaintiff fell.  Carnival had the right to reject any and all items, materials, selection, designs, and construction.  Carnival holds the ultimate control under their contract with Fiancantieri, S.p.A. to withhold payment if an item, material, construction, or design is rejected or at issue and not resolved.

98.	Carnival also custom designed and built the entire *Conquest*-class ships.  The Carnival *Conquest*-class ships include the *Glory, Valor, Liberty,* and *Freedom*.

99.	A cruise line, like Carnival, may be found liable for negligent design when the cruise line created, participated in, or approved the design of the area of injury. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 Fed. Appx. 837 (11th Cir. 2012); *see also Whelan v. Royal Caribbean Cruises, Ltd.*, 2013 WL 5583970, at *4 (S.D. Fla. Aug. 14, 2013).  Carnival maintains shoreside departments that are responsible for creating, participating in, and/or approving the design, selection and construction of all aspects and/or features of Carnival's ships including the flooring of the staircases on the *Conquest*. Carnival also maintains shoreside departments that create, participate in, and/or approve changes and modifications to the design, construction, and selection of materials when Carnival refits or modifies its ships including the flooring on its staircases. These shoreside departments consist of naval architects, engineers, designers, and other personnel who

are employed by Carnival.  As such, Carnival maintained the ultimate control over the design, selection of materials, and construction of the *Conquest*-class ships including the original *Conquest*. Upon information and belief, Carnival's contract with the shipyard allowed Carnival to make progressive payments as work was completed. Upon information and belief, Carnival's payment scheme allowed Carnival the power and right to demand changes and modifications to the design, selection of materials, and construction of the *Conquest* at any time.

100.    Carnival chose to create, design, select materials for, construct, and provide open decks with staircases for its passengers to be able to traverse from deck to deck. Carnival operates open deck with staircases, like the one Plaintiff slipped and fell on, aboard all of its ships, including the *Conquest*.

101.    Carnival knew or should have known the design, construction, and selection of flooring materials for its open deck staircases was unreasonably dangerous. Carnival knew or should have known that Carnival's design, construction, and selection of the flooring materials on its open deck staircases failed to comply with all applicable industry standards, laws, codes, and regulations. Carnival also knew or should have known that the material in the slip-resistance tape used on its open deck staircases was unreasonably dangerous, would wear-down quickly or unreasonably, would be damaged quickly or unreasonably by exposure to the elements, and/or failed to comply with all applicable industry standards, laws, codes, and regulations.

102.    Carnival's duty to design, construct, and select materials for all areas and features of its vessels, including the flooring on its open deck staircases aboard the *Conquest*, is part of Carnival's duty of reasonable care under the circumstances.  Carnival had a duty to design, select materials, and construct the flooring in a reasonably safe manner, not to be unreasonably slippery,

extremely slippery when wet, not to hold and accumulate water in the area where Plaintiff fell, and/or in accordance with all applicable industry standards, laws, codes, and regulations.

103.    Carnival breached its duty of care owed to Plaintiff and was negligent by failing to design, construct, select, approve, and/or reject the flooring materials used on the open deck staircases of the *Conquest*.  Carnival failed to design, construct, select, approve, and/or reject flooring materials that complied with all applicable industry standards, laws, codes, and regulations. The flooring materials Carnival selected and used to construct the flooring on the open deck staircases where Plaintiff fell was unreasonably slippery, extremely slippery when wet, would hold and accumulate water, and/or was dangerous.

104.    Because Carnival had the ultimate control over the design, construction, and selection of materials for its ships, Carnival could refuse to approve the design, construction, and selection of materials used for the flooring on the open deck staircases of the *Conquest*.  Carnival knew or should have known about the dangerousness of the flooring on the staircase leading to the Panorama Deck from prior similar incidents. Defendant documents slip and falls in various ways, which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing, slip-resistance testing, and/or inspections testing. Examples of prior similar incidents known to date are contained in paragraph 28 of the Complaint.

105.    Carnival knew or should have known of the dangerousness of the open deck flooring on its staircases since the installation of the flooring on or before December 1, 2002, and/or any subsequent changes or modifications made to the flooring, staircases, and/or any and all other instances Carnival made changes or modifications to the subject flooring.

106.    Carnival's negligent design, construction, and selection of materials proximately caused Plaintiff's injuries. Had Carnival properly designed, constructed, and/or selected the materials of the flooring on the open deck staircases of the *Conquest* to not be unreasonably slippery, not be extremely slippery when wet, not hold and accumulate water, and/or otherwise without the presence of dangerous conditions, Plaintiff would never have slipped and fallen onto the hard floor surface.

107.    Carnival's negligent design, construction, and selection of materials proximately caused permanent injuries and damages to Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiff sues Carnival and demands judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

**Dated:**            **January 13, 2025.**

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this 13th day of January, 2025, I filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record. All parties not already appearing in these proceedings shall be served via process server.

Respectfully submitted,

By:    */s/ Simeon Genadiev*
**SIMEON GENADIEV, ESQ.**
Florida Bar No.: 100918
**THE G LAW GROUP, P.A.**
1501 Biscayne Blvd., Suite 501
Miami, FL 33132
Tel: (305) 709-8877
Fax: (786) 460-8333
sgenadiev@theglawgroup.com

**MACHADO GLOBAL LAW, P.A.**
SAMIR MACHADO, ESQ.
Florida Bar No.: 1031285
1700 Embassy Drive., 705
West Palm Beach, FL 33401
Telephone: (561) 480-1308
Facsimile: (888) 218-4348
Samir@machadoglobalaw.com

*Attorneys for the Plaintiff*
